IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 05–cv–01415–EWN–MEH


RAYMOND GOTFREDSON, and
TRIM WORK SPECIALITY, INC.,

      Plaintiffs,

v.

LARSEN LP,
ROBERT E. LONG, Trustee, Trust A, U/W/O Charles F. Urschel, Jr.,
WENDY U. LARSEN, Trustee, Trust B U/W/O Charles F. Urschel, Jr.,
MARCELLA LARSEN, f/k/a Marcella Larsen Chilson, Individually, and as
trustee of the 1991 Larsen Irrevocable Trust,
AMERICAN FAMILY MUTUAL INSURANCE COMPANY, and
ZURICH AMERICAN INSURANCE COMPANY,

      Defendants.

---

## ORDER AND MEMORANDUM OF DECISION

---

Plaintiffs' federal claims in this case arise under 18 U.S.C. § 1962(c), the Racketeer

Influence and Corrupt Organizations Act ("RICO") and the United States Constitution.  Plaintiffs

Raymond Gotfredson and Trim Work Specialty, Inc., assert claims for: (1) declaratory relief

against Defendants Larsen L.P., Robert E. Long as trustee for Trust A, Wendy U. Larsen as

trustee for Trust B, Marcella Larsen, Marcella Larsen as trustee of the 1991 Larsen Irrevocable

Trust, America Family Mutual Insurance Company, and Zurich American Insurance Company; (2)

intentional interference with a contract against Defendants Larsen L.P., Long, Wendy Larsen, and

Marcella Larsen; (3) civil conspiracy against Defendants Larsen L.P., Long, Wendy Larsen, and

Marcella Larsen; (4) violation of 18 U.S.C. § 1962(c) against Defendants Larsen L.P., Long,

Wendy Larsen, and Marcella Larsen; and (5) false representation against Defendants Larsen L.P.,

Long, Wendy Larsen, and Marcella Larsen.  This matter is before the court on: (1) "Defendants'

Motion to Dismiss Amended Complaint [Defendants Larsen L.P., Long, and Wendy Larsen],"

filed August 22, 2005; (2) "Defendant Marcella Larsen's Fed. R. Civ. P. [sic] 12(b)(1) and

12(b)(6) Motion to Dismiss With Incorporated Memorandum of Law," filed August 22, 2005; (3)

"Defendant Marcella Larsen, Trustee of the 1991 Larsen Irrevocable Trust's Motion to Dismiss

and Incorporated Memorandum of Law and Joinder in the Other Defendants' Motions to

Dismiss," filed August 25, 2005; and (4) "Defendant Marcella Larsen's Motion to Amend the

Caption," filed November 28, 2005.  Jurisdiction is based upon 28 U.S.C. § 1331.

## FACTS

### 1.    *Factual Background*

The following facts are taken from Plaintiffs' second amended complaint.  This case arises

out of a construction contract involving real property — Tract A and Tract B— containing three

structures in Aspen, Colorado.  (Second Am. Compl. and Jury Demand ¶ 16 [filed Jan. 31, 2006]

[hereinafter "Second Am. Compl."].)  The respective fee interests in Tract A are as follows: (1)

Defendant Long, as trustee, owns 36.5089 percent; (2) Defendant Wendy Larsen, as trustee,

owns 48.656 percent; (3) Defendant Larsen L.P. owns 2.6928 percent; and (4) Defendant

Marcella Larsen, individually, owns 12.1417 percent.  (*Id.* ¶¶ 17a–d.)  The respective fee interests

in Tract B are as follows: (1) Defendant Long, as trustee, owns 18.387 percent; (2) Defendant

Marcella Larsen, individually, owns 40.8065 percent; and (3) Defendant Marcella Larsen, as

trustee, owns 40.8065 percent. (*Id.* ¶¶ 18a–c.) Defendant Marcella Larsen, individually and as

trustee, was a tenant on the aforementioned properties. (*Id.* ¶ 19.) Defendant Marcella Larsen

entered into ground leases with Defendants Larsen L.P., Long, and Wendy Larsen, as landlords.

(*Id.* ¶ 22.) Defendant Wendy Larsen is Defendant Marcella Larsen's mother. (*Id.* ¶ 35.) Both

Defendants Wendy Larsen and Marcella Larsen are licensed attorneys. (*Id.*) Defendant Long is

Defendant Wendy Larsen's husband and Defendant Marcella Larsen's stepfather. (*Id.* ¶¶ 35–36.)

Defendant Marcella Larsen hired Plaintiff Trim Work Specialty, Inc. as the general contractor to

build three structures on Tracts A and B. (*Id.* ¶ 24.)

Plaintiffs contend that beginning in January or February 2004, Defendants Larsen L.P.,

Long, Wendy Larsen, and Marcella Larsen manipulated and falsified "repairs" to the project,

demanding that Plaintiffs remedy them. (*Id.* ¶ 27.) Plaintiffs assert that in February and March

2004, Defendants Larsen L.P., Long, and Wendy Larsen submitted the manipulated and falsified

claims to Plaintiffs' insurance carriers — Defendants American Family Insurance Company and

Zurich American Insurance Company — demanding payment. (*Id.* ¶ 29.) On April 13, 2004,

Plaintiffs received a notice of suspension. (*Id.* ¶ 30.)

Defendant Marcella Larsen, individually and as trustee, as the tenant of the properties,

filed an action against the Plaintiffs in the Pitkin County District Court in the State of Colorado,

alleging, *inter alia*, that the properties contain construction defects. (*Id.* ¶ 31.) That action is

currently pending. (*Id.*) Defendants Larsen L.P., Long, and Wendy Larsen, the landlords and

part owners of the properties, did not join as parties in that lawsuit.  Instead, they instituted

expedited arbitration proceedings against Defendant Marcella Larsen, individually and as trustee,

pursuant to the ground leases.  (*Id.* ¶¶ 32–33.)  The landlords, Defendants Larsen L.P., Long, and

Wendy Larsen, instituted the arbitration under the pretense that the ground lease obligated the

tenant, Defendant Marcella Larsen, to supervise the construction and she had non-delegable

duties to make sure the structures were built free of defects.  (*Id.* ¶ 33.)  Notably, the "claimants"

in the arbitration are the mother and stepfather of the "respondents" in the arbitration.  (*Id.* ¶ 37.)

Plaintiffs filed a motion in the Pitkin County District Court case seeking to stay the

expedited arbitration because of feared collusion and to have the court join Defendants Larsen

L.P, Long, and Wendy Larsen as party plaintiffs in the Pitkin County District Court case.  (*Id.* ¶

48.)  Defendant Marcella Larsen, the would be respondent in such arbitration, opposed the

motion to stay the arbitration proceedings.  (*Id.* ¶ 49.)  Additionally, Plaintiffs contend that

Defendant Marcella Larsen would not allow her insurance-appointed defense counsel to seek a

continuance in order to adequately prepare for such arbitration.  (*Id.*)  Defendant Marcella Larsen

asked the Pitkin County District Court to deny the Plaintiffs' motion to join Defendants Larsen

L.P., Long, and Wendy Larsen as party plaintiffs in the Pitkin County District Court case.  (*Id.* ¶

50.)  Plaintiffs assert that instead, Defendant Marcella Larsen actively sought to proceed with the

expedited arbitration so that her family members could get a multi-million dollar judgment against

her in an arbitration that began less than a month from when the arbitration started.  (*Id.* ¶ 51.)

The Pitkin County District Court denied Plaintiffs' motion to stay the arbitration.  (*Id.* ¶ 55.)

Plaintiffs allege that during the arbitration Defendant Marcella Larsen's defense counsel was not allowed or encouraged to present all available defenses to the claimed damages and liability. (*Id.* ¶¶ 58–59.)  Additionally, Plaintiffs contend that Defendant Marcella Larsen intentionally provided testimony and legal theories in an effort to maximize the damage award that could be entered in favor of her mother and stepfather. (*Id.* ¶ 58.)

On June 23, 2005, Defendants Larsen L.P., Long, and Wendy Larsen, as landlords and claimants in the arbitration, received an arbitration award against Defendant Marcella Larsen, as tenant and respondent in the arbitration, in the amount of $4,813,354.61, along with attorneys' fees and costs totaling $86,385.21. (*Id.* ¶ 66.)  On July 1, 2005, Defendant Marcella Larsen, individually and as trustee, demanded that Plaintiffs immediately indemnify and hold her harmless for these amounts. (*Id.* ¶ 68.)

**2.     *Procedural History***

On July 27, 2005, Plaintiffs filed a complaint in this court. (Compl. and Jury Demand [filed July 27, 2005].)  Plaintiffs asserted claims for: (1) declaratory judgment against all Defendants; (2) intentional interference with contract against Defendants Larsen L.P., Long, Wendy Larsen, and Marcella Larsen; (3) civil conspiracy against Defendants Larsen L.P., Long, Wendy Larsen, and Marcella Larsen; and (4) false representation against Defendants Larsen L.P., Long, Wendy Larsen, and Marcella Larsen. (*Id.* ¶¶ 44–67.)  On August 12, 2005, Plaintiffs filed an amended complaint. (Am. Compl. and Jury Demand [filed Aug. 12, 2005].)  Plaintiffs added a RICO claim against Defendants Larsen L.P., Long, Wendy Larsen, and Marcella Larsen. (*Id.* ¶¶ 62–67.)

On August 22, 2005, Defendants Larsen L.P., Long, and Wendy Larsen filed a motion to dismiss the amended complaint.  (Defs.' Mot. to Dismiss Am. Compl. [Defendants Larsen L.P., Long, and Wendy Larsen] [filed Aug. 22, 2005] [hereinafter "Def. Larsen L.P.'s Br."].) Defendants Larsen L.P., Long, and Wendy Larsen contend that the court must dismiss Plaintiffs' civil RICO claim because: (1) Plaintiffs did not allege, with specificity, the predicate acts of racketeering; (2) Plaintiffs did not plead their RICO claim with the requisite specificity under Rule 9(b); and (3) Plaintiffs failed to state a RICO claim under Rule 12(b)(6).  (*Id.* at 2.)  On September 26, 2005, Plaintiffs filed a response to Defendants Larsen L.P.'s, Long's, and Wendy Larsen's motion to dismiss.  (Pls.' Resp. to Defs.' Mot. to Dismiss Am. Compl. [Defs. Larsen L.P., Long, and Wendy Larsen] [filed Sept. 26, 2005] [hereinafter "Pls.' Resp. to Larsen L.P.'s Br."].)  On October 18, 2005, Defendants Larsen L.P. and Long filed a reply in support of their motion to dismiss.  (Defs.' Reply Re: Mot. to Dismiss Am. Compl. [Defs. Larsen L.P. and Robert E. Long] [filed Oct. 18, 2005] [hereinafter "Defs. Larsen L.P.'s and Long's Reply"].)  Similarly, on October 18, 2005, Defendant Wendy Larsen filed a separate reply in support of the motion to dismiss.  (Def. Wendy U. Larsen's Reply Br. in Supp. of Defs.' Mot. to Dismiss Am. Compl. [Defs. Larsen L.P., Long, and Wendy Larsen] [filed Oct. 18, 2005] [hereinafter "Def. Wendy Larsen's Reply"].)

On August 22, 2005, Defendant Marcella Larsen filed a motion to dismiss the amended complaint.  (Def. Marcella Larsen's Fed. R. Civ. P. 12[b][1] and 12[b][6] Mot. to Dismiss with Incorporated Mem. of Law [filed Aug. 22, 2005] [hereinafter "Def. M. Larsen's Br."].) Defendant Marcella Larsen asserts that: (1) the Rooker-Feldman doctrine bars this court's

jurisdiction; and (2) Plaintiffs have failed to state a RICO claim.  (*Id.* at 3–15.)  On September 26, 2005, Plaintiffs filed a response to Defendant Marcella Larsen's motion to dismiss.  (Pls.' Resp. to Def. Marcella Larsen's Fed. R. Civ. P. 12[b][1] and 12[b][6] Mot. to Dismiss [filed Sept. 26, 2005] [hereinafter "Pls.' Resp. to Def. M. Larsen's Br."].)  On October 18, 2005, Defendant Marcella Larsen filed a reply in support of her motion to dismiss.  (Defs. Marcella Larsen, Individually, and as Trustee of the 1991 Larsen Irrevocable Trust, Reply in Supp. of Defs.' Fed. R. Civ. P. 12[b][1] and 12[b][6] Mot. to Dismiss [filed Oct. 18, 2005] [hereinafter "Def. M. Larsen's Reply"].)  Defendant Marcella Larsen confesses the Rooker-Feldman argument.  (*Id.*)

On August 25, 2005, Defendant Marcella Larsen, as trustee of the 1991 Larsen irrevocable trust, filed combined motions to dismiss and for joinder in the other Defendants' motion to dismiss.  (Def. Marcella Larsen, Trustee of the 1991 Larsen Irrevocable Trust's Mot. to Dismiss and Incorporated Mem. of Law and Joinder in the Other Defs.' Mots. to Dismiss [filed Aug. 25, 2005] [hereinafter "Def. M. Larsen's Joinder"].)  Defendant Marcella Larsen moves to dismiss the Benjamin Larsen Trust as a party defendant and moves to join the other Defendants' motions.  (*Id.* at 1–2.)  On September 26, 2005, Plaintiffs filed a response to Defendant Marcella Larsen, as trustee of the 1991 Larsen irrevocable trust's, motion to dismiss and joinder.  (Pls.' Resp. to Def. M. Larsen, Trustee of the 1991 Larsen Irrevocable Trust's Mot. to Dismiss and Incorporated Mem. of Law and Joinder in the Other Defs.' Mots. to Dismiss [filed Sept. 26, 2005] [hereinafter "Pls.' Resp. to Def. M. Larsen's Joinder"].)  Plaintiffs clarified that the Benjamin Larsen trust was not a named defendant in this case.  (*Id.* at 1.)  On October 11, 2005, Defendant Marcella Larsen filed a reply in support of her motion to dismiss.  (Def. Marcella

Larsen, Trustee of the 1991 Larsen Irrevocable Trust's Reply in Supp. of Mot. to Dismiss [filed

Oct. 11, 2005] [hereinafter "Def. M. Larsen's Reply to Joinder"].)

On September 19, 2005, Defendant American Family Mutual Insurance Company filed an

answer to Plaintiffs' amended complaint.  (Def. Am. Family Mut. Ins. Co.'s Answer [filed Sept.

19, 2005].)  On September 30, 2005, Defendant Zurich American Insurance Company filed an

answer to Plaintiffs' amended complaint.  (Zurich Am. Ins. Co.'s Answer to Pls.' Am. Compl. and

Jury Demand [filed Sept. 30, 2005].)

On January 24, 2006, Plaintiffs filed a motion for leave to file a second amended

complaint.  (Pls.' Mot. for Leave to File Second Am. Compl. [filed Jan. 24, 2006].)  On January

27, 2006, Defendants Larsen L.P. and Long filed a response to Plaintiffs' motion for leave to file

a second amended complaint.  (Resp. to Pls.' Mot. to File a Second Am. Compl. By Defs. Larsen

Ltd. P'ship and Long [filed Jan. 27, 2006] [hereinafter "Defs.' Resp. to Mot. to File Second Am.

Compl."].)  Defendants Larsen L.P. and Long contend that "[a]s set forth in detail in these

Defendants' Reply regarding their Motions to Dismiss Plaintiffs' First Amended Complaint (filed

October 18, 2005, Document 46), even their proposed Second Amended Complaint continues to

insufficiently plead anything close to a legitimate RICO claim."  (*Id.* at 1.)  On January 31, 2006,

the magistrate judge granted Plaintiffs' motion for leave to file a second amended complaint.

(Minute Order [filed Jan. 31, 2006] [hereinafter "Magistrate Order"].)  Further, the magistrate

judge noted that "the current pending motions to dismiss will equally apply to the [s]econd

[a]mended [c]omplaint."  (*Id.*)  On January 31, 2006, Plaintiffs filed a second amended complaint.

(Second Am. Compl.)

-8-

## ANALYSIS

### 1.    *Standard of Review*

Defendants[1] move to dismiss the complaint under Federal Rule of Civil Procedure

12(b)(6) or 9(b).  (Def. M. Larsen's Br. at 5–14; Def. Larsen L.P.'s Br. at 4–5.)  For the purposes

of a motion to dismiss under Rule 12(b)(6), a court should only dismiss the claim "when it

appears that the plaintiff can prove no set of facts in support of the claims that would entitle him

to relief, accepting the well-pleaded allegations of the complaint as true and construing them in

the light most favorable to the plaintiff."  *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th

Cir. 2003) (quoting *Yoder v. Honeywell, Inc.*, 104 F.3d 1215, 1224 [10th Cir.1997], *cert. denied*,

522 U.S. 812) [1997]).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential

evidence that the parties might present at trial, but to assess whether the plaintiff's complaint

alone is legally sufficient to state a claim for which relief may be granted."  *Id.* (quoting *Sutton v.

Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 [10th Cir.1999]).

Federal Rule of Civil Procedure 9(b) states that "[i]n all averments of fraud or mistake, the

circumstances constituting fraud or mistake, shall be stated with particularity."  Fed. R. Civ. P.

9(b).  Under Rule 9(b), Plaintiffs must sufficiently allege each element of a RICO violation and its

---

[1]From this point forward, for purposes of this Order and Memorandum of Decision, I refer to Defendants Larsen L.P., Long, Wendy Larsen, Marcella Larsen, and Marcella Larsen as trustee of the 1991 Larsen Irrevocable Trust as "Defendants" collectively.  When necessary, I will refer to the individual Defendants.  Indeed, the aforementioned Defendants joined in each others' motions to dismiss and adopted all the arguments set forth therein.  (Defs. Larsen L.P.'s and Long's Reply at 1; Def. M. Larsen's Joinder at 7.)  Further, the resolution of the issues in this Order and Memorandum of Decision does not involve Defendants American Family Mutual Insurance Company and Zurich American Insurance Company.

predicate acts of racketeering with particularity, "a requirement justified by the 'threat of treble damage and injury to reputation.'"  *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 989 (10th Cir. 1992) (quoting *Cayman Exploration Corp. v. United Gas Pipe Line*, 873 F.2d 1357, 1362 [10th Cir. 1989]).

### 2.     *Preliminary Matter*

From the outset, I note that Defendants' respective motions to dismiss are all directed at an inoperative pleading — Plaintiffs' first amended complaint.  A pleading that has been amended under Federal Rule of Civil Procedure 15(a), supersedes the pleading it modifies and remains in effect throughout the action unless it is subsequently modified.  *Gilles v. United States*, 906 F.2d 1386, 1389 (10th Cir. 1990).  On August 12, 2005, Plaintiffs filed their amended complaint.  (Am. Compl.)  On August 22, 2005, Defendants filed their respective motions to dismiss.  (Def. M. Larsen's Br.; Def. Larsen L.P.'s Br.)  Subsequently, on January 31, 2006, Plaintiffs filed a second amended complaint.  (Second Am. Compl.)  Thus, Defendants' motions to dismiss are technically moot because they are directed at a pleading that is no longer operative.

Nevertheless, Defendants contend that the arguments in their motions should still be evaluated with respect to Plaintiffs' second amended complaint.  (Defs.' Resp. to Mot. to File Second Am. Compl.; *see also* Magistrate Order.)  Additionally, the magistrate judge's order granting Plaintiffs' motion to file a second amended complaint held that "the current pending motions to dismiss will equally apply to the [s]econd [a]mended [c]omplaint." (Magistrate Order.)  Plaintiffs did not file an objection to the magistrate's order, thus, it stands as the order of

this court.  Fed. R. Civ. P. 72(a).  Accordingly, I evaluate Defendants' respective motions to

dismiss as directed at Plaintiffs' second amended complaint.

**3.      *Evaluation of Plaintiffs' Claims***

Defendants move to dismiss Plaintiffs' complaint based on lack of subject-matter

jurisdiction.  (Def. M. Larsen's Br. at 3; Def. Larsen L.P.'s Br. at 1.)  Defendants contend that

Plaintiffs' RICO claim is the only "arguable basis for this [c]ourt's subject-matter jurisdiction,"

and because Plaintiffs cannot demonstrate a cognizable RICO claim, Plaintiffs' complaint must be

dismissed.  (Def. Larsen L.P.'s Br. at 1–3.)  Plaintiffs contend that this court's subject-matter

jurisdiction is not limited to RICO.  (Pls.' Resp. to Def. Larsen L.P.'s Br. at 1–2.)  Rather,

Plaintiffs argue that they not only adequately pled their RICO claim, but, jurisdiction is also

premised on the United States Constitution, the Federal Declaratory Judgment Act, and the

Federal Arbitration Act.[2]  (Pls.' Resp. to Def. Larsen L.P.'s Br. at 1–14; Second Am. Compl. ¶

12.)  I evaluate subject-matter jurisdiction based on Plaintiffs' RICO and due process claims.

**a.      *Civil RICO***

---

[2]The Federal Arbitration Act alone cannot confer subject-matter jurisdiction on the federal
courts.  *Comanche Indian Tribe of Oklahoma v. 49, L.L.C.*, 391 F.3d 1129, 1131 n.4 (10th Cir.
2004).  Similarly, the Declaratory Judgment Act is procedural in nature and does not confer
subject-matter jurisdiction upon federal courts.  *Cardtoons v. Major League Baseball Ass'n*, 95
F.3d 959, 964 (10th Cir. 1996).  Thus, the district court's power to grant declaratory relief must
lie in some independent basis of federal subject-matter jurisdiction.  *Id.* As discussed in more
detail below, Plaintiffs have not adequately alleged an independent basis for subject-matter
jurisdiction.  Thus, this court does not have jurisdiction pursuant to the Federal Arbitration Act or
the Declaratory Judgment Act.

Defendants contend that Plaintiffs' complaint fails to state a civil RICO claim.  (Def. Larsen L.P.'s Br. at 5; Def. M. Larsen's Br. at 5–14.)  Specifically, Defendants assert that "Plaintiffs' attack on the arbitration is disguised as a civil RICO claim as a means to obtain the desired federal jurisdiction."  (Def. M. Larsen's Br. at 5.)  Additionally, Defendants contend that "Plaintiffs' RICO action most egregiously fails to state a claim upon which relief could ever be granted and it should be dismissed with prejudice."  (*Id.*)

Plaintiffs brought their RICO claim pursuant to 18 U.S.C. § 1962(c), which provides that: "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which effect, interstate commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  18 U.S.C. § 1962(c) (2005).  To state a claim under RICO's section 1962(c), Plaintiffs must allege four statutory elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.  *Boone v. Carlsbad Bancorporation, Inc.*, 972 F.2d 1545, 1555 n.7 (10th Cir. 1992); *Bancoklahoma Mortgage Corp. v. Capital Title Co., Inc.*, 194 F.3d 1089, 1100 (10th Cir. 1999).  I assume, without deciding, for purposes of this analysis, that Plaintiffs have satisfied the first two elements of a RICO cause of action.  I move to the third element.

A "pattern of racketeering activity" requires at least two acts of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 n.14 (1985).  "The implication is that while two acts are necessary, they may not be sufficient."  (*Id.*)  A pattern requires more than just the existence of multiple racketeering predicates.  *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229,

238 (1989).  Here, Plaintiffs contend that they have established a pattern of racketeering activity consisting of the following predicate acts: (1) conspiracy to commit extortion, (2) mail and wire fraud, and (3) interstate travel in aid of extortion.  (Pls.' Resp. to Def. M. Larsen's Br. at 9; Second Am. Compl. ¶¶ 99a–c.)  In order for Plaintiffs to prove a pattern, they must demonstrate not only the existence of two or more predicate acts, but also that they are related and pose at least a threat of continued criminal activity.  *H.J.*, 492 U.S. at 238–39.  Thus, Plaintiffs must show two elements — "continuity plus relationship."  *Feinstein v. RTC*, 942 F.2d 34, 44 (1st Cir. 1991).

### *(1)* *Relationship*

The relationship test "'is not a cumbersome one for a RICO plaintiff.'"  *Boone*, 972 F.2d at 1555 (quoting *Feinstein*, 942 F.2d at 44).  A showing that predicate acts "'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events'" is all that is needed.  *Boone*, 972 F.2d at 1555 (quoting *H.J.*, 492 U.S. at 240.)  The facts as pled, *inter alia*, accuse Defendants of conspiring to defraud Plaintiffs by engineering a scheme to inflate and falsify construction repairs, obtain a sham arbitration award, and demand payment of the award through collusion and fraud.  (Second Am. Compl. ¶ 97.)  The facts, as alleged in Plaintiffs' complaint reveal that this "scheme" began in January or February of 2004[3] — when Defendants began to

---

[3]Plaintiffs vaguely contend that Defendants' scheme began "as early as July 2002 with the construction contract."  (Second Am. Compl. ¶ 97.)  Plaintiffs' only allegations with respect to the July 2002 date is that the parties entered into the construction contract on this date.  (*Id.* ¶ 24.)  Plaintiffs have not asserted any other allegations regarding activity during the years 2002 and

manipulate and falsify repairs and demand that Plaintiffs remedy and correct them — through June 23, 2005 — the date the arbitration award was issued — culminating in July 2005 — the date Plaintiffs filed their initial complaint in this court.  (*Id.*)  Additionally, Plaintiffs allege that this scheme is ongoing and "continue[s] today as [Defendants] attempt to collect and demand payment of the award that was obtained through collusion and fraud."  (*Id.*)

As predicate acts to accomplish this scheme, Plaintiffs accuse Defendants, *inter alia*, of using: (1) the mail in July 2004 to demand that Plaintiffs remedy false repairs, (Second Am. Compl. ¶ 27); (2) the mail in February 2004 and March 2004 to submit manipulated and falsified claims to Plaintiffs' insurance carriers demanding payment, (*id.* ¶ 29); (3) the mail on April 13, 2004 to send Plaintiffs a notice of suspension, (*id.* ¶ 30); (4) wire services in July 2004 to file an action against Plaintiffs in Pitkin County District Court, (*id.* ¶ 31); (5) the mail on December 22, 2004, to demand "[four million dollars] from Plaintiffs with the suggestion that Plaintiffs demand that their insurance carriers pay it . . .," (*id.* ¶ 38); (6) the mail on Janaury 3, 2005, to provide Plaintiffs with a notice of intent to file arbitration, (*id.* ¶ 41); (7) the mail on January 4, 2005 to advise Plaintiffs that the expedited arbitration would take place in Colorado, (*id.* ¶ 42); (8) the mail on February 2, 2005, to demand that Plaintiffs settle the claim and pay Defendants Larsen L.P., Long, and Wendy Larsen two million dollars, (*id.* ¶ 52); (9) the mail on May 13, 2005 to threaten Plaintiffs to settle the claims, (*id.* ¶ 65); and (10) the mail on July 1, 2005 to demand that Plaintiffs immediately indemnify Defendant Marcella Larsen and hold her harmless for the amount

---

2003.  (*Id.*, *passim.*)  All of Plaintiffs' allegations with respect to the "scheme" began in January 2004.  Thus, I consider the alleged scheme to have begun in January 2004.

of the arbitration judgment.  (*Id.* ¶ 68.)  These facts, allegedly including schemes and episodes

over a period of seventeen months, "involve a common scheme executed against common victims

for a single goal."  *See Boone*, 972 F.2d at 1556.  Thus, Plaintiffs have alleged sufficient facts to

satisfy the relationship test.

### (2)   *Continuity*

Next, Plaintiffs must properly allege continuity.

> Continuity is both a closed- and open-ended concept, referring either to a closed
> period of repeated conduct, or to past conduct that by its nature projects into the
> future with a threat of repetition.  It is, in either case, centrally a temporal concept
> — and particularly so in the RICO context, where what must be continuous,
> RICO's predicate acts or offenses, and the *relationship* these predicates must bear
> one to another, are distinct requirements.

*H.J.*, 492 U.S. at 241–42.  Here, Plaintiffs vaguely contend that their complaint sufficiently alleges

both a closed and open-ended scheme.  (Pls.' Resp. to Def. M. Larsen's Br. at 8–9.)  Thus, I

evaluate both concepts.

### (A)   *Closed-Ended*

"A party alleging a RICO violation may demonstrate continuity over a closed period by

proving a series of related predicates extending over a substantial period of time.  Predicate acts

extending over a few weeks or months and threatening no future criminal conduct do not satisfy

this requirement."  *H.J.*, 492 U.S. at 241–42.  The facts, as alleged by Plaintiffs, do not satisfy the

continuity requirement.  Plaintiffs have not sufficiently pled a threat of "future criminal conduct."

*See id.*  Plaintiffs essentially allege a closed-ended series of predicate acts.  Specifically, viewing

the complaint in a light most favorable to Plaintiffs, Plaintiffs' complaint asserts a closed-ended

series of predicate acts constituting a single scheme — false or fraudulent claims and a sham arbitration — to accomplish a discrete goal — garner a large sum of money from Plaintiffs — directed at a finite group of individuals — Plaintiff Gotfredson and his company, Plaintiff Trim Work Specialty, Inc — "'with no potential to extend to other persons or entities.'" *See Boone*, 972 F.2d at 1556 (quoting *SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1516 [10th Cir. 1990]). "While a single scheme may suffice in some instances, here, there is no indication of a threat of continued illegal activity." *SIL-FLO*, 917 F.2d at 1516 (holding that the plaintiffs could not establish the closed-ended scheme because there was no threat of continued illegal activity and no possibility that the activity would extend to other persons or entities). In enacting RICO, "Congress was concerned . . . with long-term criminal conduct." *H.J.*, 492 U.S. at 242. Additionally, the conduct in this case is limited with respect to the extent the world outside the alleged enterprise was affected. *See SIL-FLO*, 917 F.2d at 1516.

Plaintiffs offer two arguments that counsel against this result. First, Plaintiffs contend that they have sufficiently asserted closed-ended continuity because "the [Defendants'] conduct beginning with the execution of the [g]round [l]eases, through the construction period (which began in 2002), continuing with their collusion and fraud with the sham arbitration and continuing through today with threats inducing economic fear — which is a three year period." (Pls.' Resp. to Def. M. Larsen's Br. at 9 [citing Am. Compl. ¶¶ 16–27, 29–40, 42–46].) Plaintiffs' argument is unavailing. First, as described above, Plaintiffs have not alleged any facts describing conduct that occurred in the years 2002 and 2003. Thus, Plaintiffs have not alleged a scheme spanning three years. At best, Plaintiffs have alleged a scheme lasting seventeen months. Even assuming

this time period is considered substantial, Plaintiffs have not asserted any facts demonstrating that there is a threat of future criminal activity. *See Boone*, 972 F.2d at 1555 (declining to address whether sixteen months was a substantial period of time or could be considered enough to establish continuity because there was not any allegation of a future threat).

Second, Plaintiffs rely on *Resolution Trust Corp. v. Stone*, 998 F.2d 1534, 1543 (10th Cir. 1993), for the proposition that "the Tenth Circuit upheld a finding of closed-ended continuity based on evidence that a jury could infer that the scheme lasted from seven to eight months and up to as many as eighteen months." (Pls.' Resp. to Def. M. Larsen's Br. at 9.) The case at bar is not analogous to *Resolution Trust*. In *Resolution Trust*, the Tenth Circuit evaluated whether the plaintiffs established continuity. *Resolution Trust*, 998, F.2d at 1543. The Court focused on two factors: (1) duration of the related predicate acts and (2) the extensiveness of the RICO enterprise's scheme. *Id.* In evaluating extensiveness, the Court considered: (1) the number of victims, (2) the number of racketeering activities, (3) the variety of racketeering activities, (4) whether the injuries caused were distinct, (5) the complexity and size of the scheme, and (6) the nature or character of the enterprise or unlawful activity. *Id.* Upon evaluating these factors, the Court held that:

> there is evidence from which the jury could infer that the scheme lasted from seven to eight months to perhaps as many as eighteen months. We find that this is a sufficient duration to support a jury's finding of continuity, particularly in light of the evidence of the extensiveness of the scheme.

*Resolution Trust*, 998 F.2d at 1545.

-17-

Here, as describe above, Plaintiffs' complaint does not allege an extensive scheme.  First, the number of victims is small and limited to Plaintiffs Gotfredson and Trim Work Specialty, Inc. "RICO is not aimed at the isolated offender." *Id.* at 1544.  Next, Plaintiffs do not allege a wide variety of racketeering activities.  At most, Plaintiffs assert a few allegations of mail and wire fraud which are neither complex or large.  Viewing the facts in a light most favorable to Plaintiffs, the predicate acts constitute a single scheme to accomplish a discrete goal.  *See Boone*, 972 F.2d at 1556 (holding that the plaintiffs did not establish continuity because the plaintiffs alleged a single scheme to accomplish a discrete goal, with no potential to extend to other persons or entities).  Thus, Plaintiffs' complaint does not allege an extensive scheme akin to the plaintiffs in *Resolution Trust*.  Accordingly, Plaintiffs cannot establish closed-ended continuity.

### *(B)      Open-Ended*

In addition to closed-ended continuity, Plaintiffs contend that their complaint sufficiently alleges open-ended continuity.  (Pls.' Resp. to Def. M. Larsen's Br. at 9.)  Courts evaluate open-ended continuity on a case by case basis.  *Resolution Trust*, 998 F.2d at 1543.  Open-ended continuity "may be established by showing that the predicates themselves involve a distinct threat of long-term racketeering activity, either implicit or explicit, or that the predicates are a regular way of conducting the defendant's ongoing legitimate business or the RICO enterprise." *Id.* Open-ended continuity requires a clear threat of future criminal conduct. *Erikson v. Farmers Group, Inc.*, 151 Fed. Appx. 672, 677 (10th Cir. 2005) (citing *Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1273 [10th Cir. 1989]).  "A single scheme to accomplish one discrete goal, directed at a finite group of individuals, with no potential to extend to other persons or entities,

rarely will suffice to establish a threat of continuing activity." *Id.* (citing *Boone*, 972 F.2d at 1556; *SIL-FLO*, 917 F.2d at 1515; *Phelps*, 886 F.2d at 1273–74). As described above, Plaintiffs' complaint alleges a single scheme to accomplish a discrete goal. Additionally, the alleged scheme only extends to Plaintiffs and Plaintiffs have not alleged that the scheme is the enterprises' regular way of conducting business. Accordingly, Plaintiffs have not established open-ended continuity.

Plaintiffs contend "open-ended continuity is also evidenced by the simple fact that the 'Larsen family' will certainly continue into the future as seen by their own admissions they have many investments together, including investments in real estate in several states." (Pls.' Resp. to Def. M. Larsen's Br. at 9.) Plaintiffs misstate the inquiry. Plaintiffs must establish that the threat of criminal activity will extend into the future, as opposed to the enterprise. The fact that the Larsen family will remain intact does not establish open-ended continuity. Thus, Plaintiffs have failed to adequately plead open-ended continuity. Accordingly, Plaintiffs' RICO claim fails on the third element — pattern of racketeering activity. Defendants' motion to dismiss is granted with respect to Plaintiffs' RICO claim.

### b.    Due Process

Plaintiffs' second basis for federal subject-matter jurisdiction is the United States Constitution. (Pls.' Resp. to Def. Larsen's Br. at 2.) From the outset, I note that Plaintiffs' complaint does not formally allege a due process claim. As stated above, Plaintiffs assert five claims for relief: (1) declaratory judgment, (2) intentional interference with contract, (3) civil conspiracy, (4) RICO, and (5) false representation. (Second Am. Compl. ¶¶ 80–108.) Buried

within Plaintiffs' first claim for relief is the following statement: "Plaintiffs seek . . . [a] declaration from the [c]ourt that the arbitration award is void and unenforceable as it was obtained through collusion and/or fraud and/or in violation of Plaintiffs' due process rights." (*Id.* ¶ 81a.)  This is Plaintiffs' sole and indirect reference to the United States Constitution.  (Second Am. Compl., *passim*.)

Plaintiffs have wholly failed to allege a constitutional claim.  First, Plaintiffs do not allege whether they are asserting a procedural or substantive due process claim.  I will assume for purposes of this Order and Memorandum of Decision that Plaintiffs are asserting a procedural due process claim.  In order to prove a procedural due process claim based on the Fifth Amendment, Plaintiffs must allege: (1) the existence of a recognized liberty or property interest, and (2) failure to receive the process that is due.  *Mathews v. Eldridge*, 424 U.S. 319, 332–35 (1976).  Plaintiffs have failed to allege any facts to support these elements.  Additionally, Plaintiffs have not alleged the process that is due in conjunction with the actor who allegedly deprived Plaintiffs of that process.  "Constitutional rights allegedly invaded, . . . must be specifically identified.  Conclusory allegations will not suffice."  *Wise v. Bravo*, 666 F.2d 1328, 1333 (10th Cir. 1981).  Thus, Plaintiffs have failed to state a due process claim under the United States Constitution.  Plaintiffs do not offer any arguments that counsel against this result.  Thus, Plaintiffs cannot establish subject-matter jurisdiction pursuant to the United States Constitution.  Accordingly, Plaintiffs have not properly pled any federal claims in this case.

### c.      Pendent State-Law Claims

Plaintiffs' remaining claims are for: (1) intentional interference of contract, (Second Am.
Compl. ¶¶ 84–89); (2) civil conspiracy, (*id.* ¶¶ 90–94); and (3) false representation. (Second Am.
Compl. ¶¶ 101–08.) This court has jurisdiction over the RICO claim and the purported
constitutional claims under 28 U.S.C. § 1331, federal question jurisdiction. As described above,
Plaintiffs do not state a claim for which relief can be granted with respect to either of these causes
of action. Plaintiffs do not assert diversity jurisdiction as a basis for their remaining claims for
relief. The record before this court reveals that the parties are not completely diverse. (*Id.* ¶¶
1–14.) My only jurisdiction over Plaintiffs' state law claims, therefore, is supplemental
jurisdiction pursuant to 28 U.S.C. § 1367(a) (2005).

Since the two claims under federal law have been dismissed, and these claims provided the
sole basis for this court's original jurisdiction, I decline to exercise supplemental jurisdiction over
Plaintiffs' remaining claims and dismiss them without prejudice to refiling in state court. 28
U.S.C. § 1367(c)(3) (2005) ("[t]he district courts may decline to exercise supplemental
jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has
original jurisdiction"); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("if the
federal claims are dismissed before trial . . . the state claims should be dismissed as well").

### 4.      Conclusions

Based on the foregoing it is therefore ORDERED that:

1.              Defendants Larsen L.P.'s, Long's, and Wendy Larsen's motion to dismiss
(# 11) is GRANTED.

2.      Defendant Marcella Larsen's motion to dismiss (# 12) is GRANTED.

3.      Defendant Marcella Larsen, as trustee of the 1991 Larsen Irrevocable Trust's, motion to dismiss (# 14) is GRANTED.

4.      Defendant Marcella Larsen's motion to amend or modify the caption (# 52) is DENIED as moot.

5.      The hearing set for March 17, 2006 is vacated, and Plaintiffs' motion to continue the hearing (# 77) is DENIED as moot.

6.      The clerk shall forthwith enter judgment in favor of Defendants and against Plaintiffs, dismissing all federal claims with prejudice and dismissing the state claim without prejudice.  Defendant may have their costs by filing a bill of costs within eleven days of the date of this order.

Dated this 9th day of March, 2006.


BY THE COURT:


s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
United States District Judge